UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE: | |
| GERALD JOSEPH FUCCI, JR., | CASE NO. 07-32378 |
| DEBTOR | CHAPTER 7 |
| ROSS KILLIAN and KRISTIN KILLIAN, | |
| PLAINTIFFS | ADV. PRO. NO. 07-03124 |
| v. | RE: ECF NOS. 1 & 77 |
| GERALD JOSEPH FUCCI, JR., | |
| DEFENDANT | |

APPEARANCES:

Irve J Goldman, Esq.　　　　　　　　　　Counsel for Plaintiffs
Pullman & Comley, LLC
850 Main Street, P.O. Box 7006
Bridgeport, CT 06601

John Walshe, Esq.　　　　　　　　　　　Counsel for Defendant-Debtor
The Cotter Law Firm, LLC
2563 Main Street
Stratford, CT 06460

**MEMORANDUM OF DECISION**

DABROWSKI, ALBERT S., United States Bankruptcy Judge

I.

**INTRODUCTION**

The captioned adversary proceeding seeks to have held nondischargeable, under Bankruptcy Code §523(a)(2)(A), (4), and (6), a claim arising out of a dispute between Ross Killian (hereafter, the "Plaintiff") and Kristin Killian (hereafter, together, the "Plaintiffs"), homeowners in Greenwich, Connecticut, and Gerald Joseph Fucci, Jr. (hereafter, the "Debtor"), the debtor in the captioned Chapter 7 bankruptcy case and a general contractor hired by the Plaintiffs to renovate their residence (hereafter, the "Property").

For the reasons set forth hereinafter, the Court concludes that the Plaintiffs' claims are dischargeable.[1]

II.

**JURISDICTION**

The United States District Court for the District of Connecticut has jurisdiction over the instant adversary proceeding by virtue of 28 U.S.C. §1334(b); and this Court derives its authority to hear and determine this proceeding on reference from the District Court pursuant to 28 U.S.C. §157(a), (b)(1) and the District Court's General Order of Reference dated September 21, 1984. This is a "core proceeding" pursuant to 28 U.S.C. §157(b)(2)(I).

III.

**FACTUAL BACKGROUND**

---

[1] Because the estate has no further assets available for distribution, the Court, having determined that Plaintiffs' claims are discharged, need not ascertain the value, if any, of Plaintiffs' claims against the Debtor.

2

Plaintiff's Property is located in the Cos Cob neighborhood of Greenwich, Connecticut. Plaintiff retained an architect, Chad Nehring (hereafter, "Nehring"), who prepared plans (hereafter, the "Plans"), Exh. 3, dated July 5, 2006 for extensive renovations to the Property. Subsequently, WW Contractors (hereafter, "WW"), a general contractor the Plaintiff had employed on prior projects, started the renovation work. WW thereafter submitted a proposal to do the renovations for a total of $650,000 and an invoice for $120,000 for work it had completed. Plaintiff thereupon terminated WW and, claiming its charges were excessive, paid WW $60,000 for the work it had done.

Following WW's termination, Plaintiff was introduced to the Debtor by a mutual acquaintance who recommended that Plaintiffs retain the Debtor to complete the renovations. At that time, Plaintiff gave the Debtor a copy of the Plans from which to prepare a proposal. On October 22, 2006, Plaintiff and the Debtor met at the Plaintiffs' house for about an hour and a half. At that meeting (hereafter, the "Interview"), the Plaintiff and Debtor discussed the Plans and the Debtor's qualifications. The Debtor presented Plaintiff with a written proposal. Plaintiff accepted and signed the proposal (hereafter, the "Contract"), Exh. A, and gave the Debtor a check for the first payment due thereunder. The Contract included the names, addresses and telephone numbers of the Debtor and Plaintiff, and stated:

> We hereby propose to furnish the materials and perform the labor necessary for the following:
>
> This proposal is an estimated cost of completion for "Proposed Additions and Alterations Prepared for the Killian Residence" as it exists in plans dated 7/5/06 supplied by owner.

3

> All phases of construction including carpentry, electrical, plumbing, and heating, any concrete work not already performed and finishes.
>
> Lighting fixtures, plumbing fixtures, windows, doors and cabinetry are al[l]otted on an average market cost basis.
>
> Permit costs responsibility of owner as well as any deposits or costs previously incurred.
>
> All work to be performed in accordance with specifications and or plans submitted by client.
>
> Any changes in work scope will be adjusted by additional work orders.
>
> The above outlined project proposal shall be executed for the agreed sum of $365,000.
>
> Payment schedule to be:  1. $60,833.33 upon agreement.  2. $60,833.33 upon start-up.  3. $121,666.66 upon completion of framing.  4. $60,833.33 upon start-up of kitchen.  5. +/- $60,834.35 upon project completion.
>
> > Respectfully submitted,
> > /s/ G.J. Fucci
>
> Accepted by:
> Name   /s/ Ross A. Killian   Date 10 /22/06

Exh. A.

The Debtor thereafter began work on the renovations and Plaintiff, on November 1, 2006, December 19, 2006, and February 21, 2007 made the second, third and fourth payments, respectively, in substantial accordance with the schedule set forth in the Contract.[2] Progress on the renovations slowed in early 2007 and, on May 11, 2007, Plaintiff terminated the Debtor from the project. Plaintiff thereafter commenced an action

---

[2]  The second payment, on November 1, 2006, was actually in the amount of $60,833.00, rather than $60,833.33 as provided by the Contract.

against the Debtor in state court; such state-court action was subsequently stayed by the automatic stay of Bankruptcy Code §362.

Additional facts and circumstances, many of which were the subject of testimony by the Plaintiff, the Debtor, or Nehring, the Plaintiff's architect who appeared as his expert witness, will be addressed by the Court in the Discussion, *infra* Part V, as appropriate.

**IV.**

**PROCEDURAL BACKGROUND**

The Debtor, on October 15, 2007, filed a voluntary petition under Chapter 7 of the Bankruptcy Code. In his Amended Schedule F (Unsecured Nonpriority Claims), filed on October 23, 2007, the Debtor listed Plaintiffs as unsecured creditors with a disputed claim for $500,000. The Plaintiffs, on December 18, 2007, commenced the captioned adversary proceeding against the Debtor by filing a six-count complaint. The first three counts of the complaint seek a determination that the Plaintiffs' claim is nondischargeable under §523(a)(2)(A) (fraud):

- Count I alleges that the Debtor made certain false representations to induce the plaintiff to hire him for the renovation project.
- Count II alleges that the Debtor fraudulently induced the Plaintiff to make certain payments.
- Count III alleges that the conduct alleged in Counts I and II violate Conn. Gen. Stat. §42-110a *et seq.*, Connecticut Unfair Trade Practices Act (hereafter, "CUTPA").

The remaining counts seek a determination of nondischargeability under §523(a)(4) (larceny, embezzlement, or defalcation by a fiduciary) and/or (a)(6) (willful and malicious

5

injury):

- Count IV alleges that the Debtor's use of the payments made to him by the Plaintiff constitute embezzlement.

- Count V alleges that the Debtor obtained the payments from the Plaintiff by larceny.

- Count VI alleges that the Debtor converted property of the Plaintiffs by using a portion of the payments received for his personal use.

Plaintiffs, on March 27, 2008, filed a proof of claim, Claim No. 6, in the amount of $898,528.19, based upon such adversary proceeding.

The Court held a three-day trial, on January 12, 13, and 16, 2009, at which it received testimonial and documentary evidence. Following the trial, the parties filed memoranda of law in support of their respective positions.

**V.**

**DISCUSSION**

*A.   Burden and Standard of Proof*

The burden of proof in a nondischargeability proceeding is on the creditor seeking an exception to discharge to prove, by a preponderance of the evidence, that its claim satisfies the requirements of one of the discharge exceptions enumerated in Bankruptcy Code §523(a). *Grogan v. Garner*, 498 U.S. 279, 286, 111 S. Ct. 654 (1991). Further, "exceptions to dischargeability are narrowly construed, an approach that implements the fresh start policy of the Bankruptcy Code." *National Union Fire Insurance Co. of Pittsburgh, Pa. v. Bonnanzio (In re Bonnanzio)*, 91 F.3d 296, 300 (2d Cir.1996) (citations and quotation marks omitted).

B.     Count I - §523(a)(2)(A)

Count I seeks to have Plaintiffs' claims arising out of certain allegedly false representations made by the Debtor during the Interview held nondischargeable under §523(a)(2)(A).

Section 523(a)(2)(A) excepts from discharge "any debt ... for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by ... false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."  Under well-established §523(a)(2)(A) principles, the plaintiff bears the burden of proof on each of the following five elements:

> (1) the debtor made the representations; (2) at the time he knew they were false; (3) he made them with the intention and purpose of deceiving the creditor; (4) the creditor relied on such representations; (5) the creditor sustained the alleged loss and damage as the proximate result of the representation having been made. . . . To be actionable, the debtor's conduct must involve moral turpitude or intentional wrong; mere negligence, poor business judgment or fraud implied in law (which may exist without imputation of bad faith or immorality) is insufficient.

*Universal Bank, N.A. v. Owen (In re Owen)*, 234 B.R. 857, 860 (Bankr. D.Conn. 1999) (quoting *AT&T Universal Card Services Corp. v. Williams (In re Williams)*, 214 B.R. 433, 435 (Bankr. D. Conn. 1997)). "A party who conceals material information with the intention of preventing another from acquiring it is subject to the same liability as one who makes a 'false representation.'"  *In re Miller*, 282 B.R. 569, 576 (Bankr. D.Conn. 2002) (quoting Restatement (Second) of Torts § 550 (1977)).

"'False pretenses' involve a misrepresentation implied from *purposeful* conduct *intended* to create a false impression."  *Id.* at 575 (emphasis added).

7

> "False pretenses" for purposes of Section 523(a)(2)(A) then may be defined as conscious deceptive or misleading conduct calculated to obtain, or deprive another of, property. It is the practice of any scam, scheme, subterfuge, artifice, deceit or chicane in the accomplishment of an unlawful objective.

*In re Kovler,* 249 B.R. 238, 261(Bankr. S.D.N.Y. 2000).

At trial, Plaintiff testified as to the impressions he formed at the Interview of the Debtor's experience and qualifications, but did not recall any false statement made by the Debtor or any attempt to conceal information. When asked about large construction jobs he had worked on, the Debtor identified several. He had not claimed to be the general contractor on those jobs, but was employed as a carpenter or assistant supervisor. The Plaintiff did not ask the Debtor about his role on those jobs and did not ask him for references; he testified that he "got the impression" that the Debtor had been the general contractor on them. The Debtor had been a licensed general contractor, but his experience as such had been on smaller jobs, such as kitchen or bath renovations costing $20,000 to $30,000. Although continuing to take on such smaller "side jobs," the Debtor had opened a motorcycle shop, and subsequently had allowed his contractor's license to lapse. He did, however, have his license reinstated before he started work on the Killian house.

The Plaintiffs have not satisfied their burden of proof as to the first two elements; they have not shown, by a preponderance of the evidence, that the Debtor knowingly made a false representation, knowingly concealed or withheld information he had a duty to disclose, or purposefully engaged in conduct intended to mislead the Plaintiff concerning his experience and qualifications.

8

Nor does the Court find that the Debtor intended to defraud or deceive the Plaintiff. Plaintiff argues that the Court should infer such intent from the Debtor's strained financial circumstances, at the time of the Interview, due to his failing motorcycle shop. Such circumstances may explain why the Debtor sought to resume his work in the construction industry, rather than continuing his motorcycle business, but the Court finds it falls considerably short of establishing fraudulent intent. As noted, *supra*, "To be actionable, the debtor's conduct must involve moral turpitude or intentional wrong; mere negligence, poor business judgment or fraud implied in law (which may exist without imputation of bad faith or immorality) is insufficient." *Owen*, 234 B.R. at 860.

Not only have the Plaintiffs failed to meet their burden as to the first three elements - that the Debtor, with fraudulent intent, knowingly made a false representation or engaged in purposeful conduct intended to create a false impression; neither have they met their burden as to the element of reliance. The level of reliance under §523(a)(2)(A) is justifiable reliance, a standard exceeding actual reliance but less demanding than that of reasonable reliance. *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437 (1995).

The Plaintiff testified that he would not have hired the Debtor had he known that the Debtor had not previously been the general contractor on larger construction jobs or that he used subcontractors and did not have his own labor crew. However, such testimony followed the breakdown of the relationship and the Plaintiff's termination of the Debtor. The self-serving nature of the Plaintiff's testimony, together with the lack of corroborating circumstantial evidence - the Plaintiff could have questioned the Debtor further on such matters, asked for references, a resume or pictures of the Debtor's work; he did none of

these - leaves the Court unpersuaded that, at the time the Plaintiff signed the Contract, the Plaintiff actually - much less *justifiably* - relied on the statements or conduct of the Debtor at the Interview in deciding to hire the Debtor. The Court finds it more likely that the Plaintiff decided to hire the Debtor on the basis of his lower cost and was content with just a cursory review of his qualifications.

Finally, the Plaintiffs bear the burden of proof that the Plaintiffs suffered a loss as the proximate result of the Debtor's statements or conduct at the Interview. The Plaintiffs contend that, as a consequence of such conduct, they incurred substantial expense after terminating the Debtor to complete the renovations and or repair defective work. The Plaintiff's expert witness, the architect who prepared the Plans, acknowledged upon cross-examination, that most of the allegedly defective workmanship was done in accordance with industry-wide standards. The Debtor's work, at the request of the Plaintiff, also included a substantial amount of work beyond the scope of the Plans, including, *inter alia*, replacing the porch, installing new garage doors, residing the existing house, and replacing the existing windows. The Debtor had not required written work orders for the additional items and the Plaintiff did not make any payments to the Debtor therefor. The Plaintiffs' claim includes amounts to repair or replace workmanship that was not shown to be defective, does not take into account the extra-contractual work done by the Debtor, and includes the cost of further extra-contractual items (e.g., $11,000 for installation of sheetrock in the basement; the Plans show only the existing basement).

The Court finds that the Plaintiffs have not met their burden of proof as to any of the requirements of nondischargeability under §523(a)(2)(A). Judgment will enter for the

Debtor on Count I.

C.    *Count II - §523(a)(2)(A)*

Count II alleges that, as work progressed, "the Debtor periodically requested various payments from the Plaintiffs, which the Debtor claimed he needed to pay subcontractors and purchase materials for the [Killian] project (the 'Payment Representations')". Complaint ¶11. Plaintiffs contend that such representations were knowingly and fraudulently made to induce the Plaintiffs to make the progress payments and that the Plaintiffs relied on such statements to their detriment. Plaintiffs ask the Court to find "the debt due and owing the Plaintiffs from the Debtor as a result of the Payment Representations" excepted from discharge under §523(a)(2)(A).

The only payments made by the Plaintiffs to the Debtor were those that the Plaintiffs were required to pay in accordance with the terms of the Contract. Such payments, therefore, "were contractual obligations rather than payments made in reliance upon the debtor's representation." *In re Ballard*, 26 B.R. 981, 985 (Bankr. D.Conn. 1983). Plaintiffs' claims are not excepted from the Debtor's discharge under §523(a)(2)(A). Judgment will enter for the Debtor on Count II.

D.    *§523(a)(2)(A) - CUTPA*

Count III alleges that the conduct complained of in Counts I and II violated CUTPA and asks that any claim thereunder be held nondischargeable under §523(a)(2)(A). Having found, *supra*, that the Debtor's conduct did not give rise to a nondischargeable claim under either Count I or Count II, additional damages, if any, arising under CUTPA as a consequence of such conduct are also dischargeable.

11

E.     *§523(a)(4) and (6) - Counts IV (Embezzlement), V (Larceny), and VI (Conversion)*

Plaintiffs claim that the Debtor "misappropriated" the progress payments made to him by the Plaintiffs by not using such funds exclusively to pay for materials and labor for the Killian Project.

> Larceny, for purposes of § 523(a)(4) is defined by reference to federal common law as "the fraudulent and wrongful taking and carrying away the property of another with intent to convert such property to the taker's use without the consent of the owner." The creditor must show that the debtor wrongfully took property *from it* with fraudulent intent.

*In re Marcou*, 209 B.R. 287, 293 (Bankr. E.D.N.Y. 1997) (citations omitted; emphasis added); *see also, e.g.*, *In re Rivera*, 217 B.R. 379, 385 (Bankr. D.Conn. 1998) (same).

> Embezzlement differs from larceny only in that in embezzlement, the original exercise of control over property was lawful, i.e. the property came into the hands of the debtor lawfully, as by consent; In re Rose, 934 F.2d 901, 903 (7th Cir.1991).

*In re Luedtke*, 429 B.R. 241, 253 n.27 (Bankr. N.D.Ind. 2010).

The Contract provided for a fixed-price, payable to the Debtor in installments as the renovations progressed. As discussed, *supra*, neither the Contract formation not the progress payments made thereunder were fraudulently induced. Nor have Plaintiffs provided any contractual or statutory provision preserving their ownership interest in or right to control the disposition of funds after they have been paid to the Debtor in accordance with the schedule set forth in the Contract. Thus, such funds became property of the Debtor and he was not obliged to obtain the Plaintiffs' consent in order to apply the progress payments received as he saw fit.

Embezzlement(Count IV), larceny (Count V) and conversion[3] (Count VI) all require, as an essential element thereof, the Debtor to have deprived Plaintiffs of their property: since the property at issue was property of the Debtor himself, his use thereof did not constitute embezzlement, larceny or conversion. Because Plaintiffs are not entitled to recover on any of these Counts, there is no debt thereunder to be excepted from the Debtor's discharge. Accordingly, judgment will enter for the Debtor on Counts IV, V, and VI.

## VI.

## CONCLUSION

In accordance with the foregoing discussion, the Court finds that the Plaintiffs have failed to sustain their burden of proof that their claims against the Debtor be excepted from discharge under §523(a)(2)(A), (4), or (6). Judgment shall enter for the Debtor on each of the Counts of the Complaint.

Dated: March 31, 2011                                    BY THE COURT

*Albert S. Dabrowski*
United States Bankruptcy Judge

---

[3]  The tort of conversion is defined in Black's Law Dictionary as follows:
    2. Tort & criminal law. The wrongful possession or disposition of another's property as if it were one's own; an act or series of acts of willful interference, without lawful justification, with an item of property in a manner inconsistent with another's right, whereby that other person is deprived of the use and possession of the property.
*Black's Law Dictionary* (9th ed. 2009), conversion